UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CIVIL ACTION NO. _____
*-ELECTRONICALLY FILED-*

DEANN STEPHENS COX and
ASHLEY LANDIS                                                    PLAINTIFFS

v.              **VERIFIED COMPLAINT AND JURY DEMAND**

GRAY MEDIA GROUP, INC., d/b/a WKYT                              DEFENDANT

*** *** ***

Plaintiffs DeAnn Stephens Cox and Ashley Landis, by counsel, file this civil action and jury demand against Defendant Gray Media Group, Inc. d/b/a WKYT and state as follows:

## INTRODUCTION

1.      Plaintiffs are former employees of Defendant who were wrongfully terminated arising out of Defendant's COVID vaccine-mandate, refusal to engage in any meaningful way in an interactive process, and discrimination against Plaintiffs on the basis of their female sex, sincerely held religious beliefs, and because of a health condition.

2.      The Defendant also wrongfully and illegally denied and withheld a substantial bonus due and owing to Ashley Landis.

## PARTIES

3.      Plaintiff DeAnn Stephens Cox was employed by Defendant as a reporter.

4.    Cox is currently a resident of Jefferson County, Kentucky but at all relevant times worked for WKYT in Lexington and whose job duties required extensive travel in Kentucky.

5.    Plaintiff Ashley Landis was employed by Defendant as a National Sales Manager.

6.    Landis is currently a resident of Alpharetta, Georgia but at all relevant times worked for WKYT in Lexington and whose job duties required extensive travel in Kentucky, Georgia, and many other states.

7.    Defendant Gray Media Group, Inc. d/b/a WKYT is a foreign corporation operating and conducting business in Lexington, Fayette County, Kentucky. It owns and operates a television station with call letters WKYT.

8.    Defendant is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current and preceding calendar years. Defendant currently has more than 500 employees.

## JURISDICTION AND VENUE

9.    This is an action for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Americans with Disabilities Act ("ADA") pursuant to 42 USC §12101 et. seq., the Kentucky Civil Rights Act, KRS 344.010 et seq. ("KRS Chapter 344"), and the Kentucky Wage and Hour Act (KRS Chapter 337.010 et seq.).

10. Plaintiffs are each an "employee" and Defendant is an "employer" under the definition of each of these statutes.

11. The Court has original jurisdiction over the Plaintiffs' claims under Title VII and the ADA pursuant to 28 U.S.C. § 1331 because those claims arise under the laws of the United States.

12. The Court may exercise supplemental jurisdiction over Plaintiffs' claims under KRS Chapter 344 and KRS Chapter 337.010 et seq. because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

13. On or about March 11, 2022, Cox filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

14. On or about March 11, 2022, Landis filed a charge of discrimination with the EEOC.

15. On or about August 8, 2022, the EEOC issued Cox a Notice of Right to Sue.

16. On or about August 8, 2022, the EEOC issued Landis a Notice of Right to Sue.

17. Venue is proper in the Lexington venue of this Court because the actions giving rise to this Complaint occurred in this venue and Gray operates and conducts its business within this venue.

18. Each Plaintiff seeks damages that, without aggregation, exceeds the minimum jurisdictional amount for this Court.

## FACTS

19.    On or about August 16, 2021, Defendant emailed its employees concerning a company-wide expansion of its COVID vaccine policy (the "vaccine mandate.").

20.    Under the policy, by September 15, 2021, all manager position employees were required to be fully vaccinated against COVID-19. By October 1, 2021, all full-time and part-time employees, contractors, tenants, and guests who entered Defendant's workspaces were required to be fully vaccinated. That email is attached as Exhibit A to this Complaint.

21.    The email claimed the vaccination policy would be administered "in a manner that complies with applicable laws and the most recent guidance from applicable authorities, including the Centers for Disease Control and Prevention (CDC), the Equal Opportunity Commission (EEOC) and local public health authorities." This representation turned out to be untrue.

22.    DeAnn Stephens Cox was a reporter for Defendant. She is a highly honored and treasured on-air personality in the Lexington, Kentucky media market. She began her broadcasting career in the mountains of Eastern Kentucky where she was a general assignment reporter and Anchor at WYMT-TV Hazard. She then transferred to WKYT, the CBS affiliate in Lexington, beginning as a morning reporter. Quickly, Cox moved into the anchor chair, and at different points in time she has anchored every newscast WKYT put on the air.

4

23.     Cox also works as a "morning-drive" radio host and is a two-time Country Music Award Winner for "Broadcast Personality of the Year."

24.     Cox began her employment with Defendant in 1995, began working with WKYT in 1998, and continued to be employed with Defendant until 2008. She was recruited by Defendant to return as a prominent on-air personality and returned as an employee in 2010. She remained employed with Defendant until her termination in 2021.

25.     Cox never has any disciplinary matters concerning her job performance. In fact, Cox was regularly recognized by Defendant for her exemplary career and her work.

26.     In 2003, Cox was diagnosed with melanoma resulting in a wide excision of the cancer and removal of lymph nodes. She continues regular monitoring to ensure the cancer does not re-occur.

27.     In 2005, in part as a result of her pregnancy, Cox suffered from deep vein thrombosis blood clots. This condition too causes regular monitoring and treatment.

28.     In March, 2020, WKYT ordered its employees to work remotely. As a result of the COVID-19 quarantine, Cox was not permitted to enter WKYT studios at that time. However, Cox continued working for WKYT remotely and was actively out in the field completing news segments and stories five days a week until her termination in October 2021.

29.    On or about August 21, 2021, less than a week after Defendant's vaccine mandate was announced, Cox completed an ADA medical Questionnaire for Defendant. The form was signed by Cox's medical provider. Cox submitted the form to Shavonne Perry, WKYT's Gray TV HR Director, by fax. Cox subsequently emailed and attempted to contact Perry by telephone to ensure the documentation had been received.

30.    Cox did not receive a response to her email and her telephone calls went unanswered. Perry did not provide Cox with any acknowledgment the request had been received.

31.    On or about August 24, 2021, Cox emailed Jeff Anderson, WKYT General Manager, with a copy to Perry, informing Anderson that she had submitted the form by fax and had attempted to confirm it had been received, but had been given no acknowledgement of receipt (or any response at all) by Perry. Cox was concerned because Perry had requested the information by September 1, 2021, and Cox wished to ensure it was timely submitted. Cox also asked Deanna Kindred to scan the documentation and submit it to Perry by email, which Kindred did.

32.    Perry responded that she would be "on the lookout" for the documentation and would confirm receipt and indicated she was going through her emails.

33.    On or about August 27, 2021, Perry emailed Kindred and requested that Kindred resend Cox's documentation by email, which Kindred did.

6

34.     On or about September 29, 2021, after over a month without receiving a decision on her request for a medical exemption from the vaccine mandate, Cox emailed Gary Heichelbech to follow up on the status of the medical documentation she had submitted.

35.     Heichelbech responded that Defendant needed additional clarification from Cox's physician regarding when Cox would be able to take the vaccine. Because Defendant had waited over thirty days to respond and request additional documentation, Defendant suspended Plaintiff, without pay, for 14 days to allow her to collect the necessary information Defendant belatedly requested.

36.     Cox obtained additional medical documentation from her health care provider, which she provided to Defendant on or about October 4, 2021. That documentation, signed by Cox's health care provider, stated that based on Cox's medical history, "she is not a candidate for Covid vaccination."

37.     Despite the clear medical documentation, Heichelbech responded to Cox that Defendant needed "more clarification from your physician or medical provider on when [Cox] would be able to take the vaccine, if ever." Heichelbech further requested that if Cox was not eligible "for a period of time" Defendant wished to know "when [Cox] could become vaccinated in order to comply with Gray's vaccine policy[.]"

38.     Cox again consulted with her medical provider, who again confirmed that Cox was not a candidate for COVID-19 vaccination. Plaintiff communicated this information to Heichelbech.

7

39.    On or about October 7, 2021, received an email from Maurice Gibson, Defendant's VP of Human Resources. In that email, without having engaged in any interactive process with Cox whatsoever, Gibson did not dispute that Cox was medically unable to be vaccinated, but nonetheless indicated Defendant had considered Cox's request "and potential alternatives through vaccination throughout and cannot accommodate [Cox's] concerns." Gibson asserted, despite not having engaged in any interactive process or even having spoken with Cox, that there was no reasonable accommodation that would allow Cox to perform the essential functions of her role without imposing a substantial undue hardship on Defendant.

40.    Gibson's email denied Cox's accommodation request outright and did not even attempt to engage in the interactive process required by the ADA.

41.    Cox was terminated from employment with Defendant because of her unvaccinated status.

42.    Upon information and belief, Defendant permitted others to be exempt from the vaccine mandate and permitted those persons to wear masks in the workplace and undergo weekly PCR testing. Defendant refused to permit Cox that same exemption that was provided to other, similarly situated employees.

43.    Defendant permitted similarly situated males to enter its workspaces and interact with its employees, contractors, and guests without being fully vaccinated for COVID-19 but denied Cox's request for an exemption from the vaccine mandate.

8

44.     Ashley Landis started at WKYT in January of 2004 as an unpaid sales intern.  In May of 2004, approaching college graduation, Landis offered to work on 100% commission. Most entry level positions were paid a salary guarantee for at least six months to allow the sales representative to establish accounts and income revenue that they could earn commission on. Defendant's management agreed and Landis earned less than $100 her first month of employment.

45.     Every month after that, for 17 years, Landis worked as a loyal employee. Her account list and revenue for the company grew exponentially.

46.     In the 17 years employed by Defendant, Landis worked tirelessly, ethically, and efficiently and achieve and surpassed most individual monthly, quarterly, and annual revenue goals.

47.     Landis developed and grew some of WKYT's largest new business accounts into the top broadcast and digital accounts for the station and Defendant nationally.

48.     In 2018, Landis was promoted to Regional Sales Manager and soon after to National Sales Manager, handling the Defendant's largest national and regional accounts. This is not a position that supervises others, but rather signifies that Landis was the sole sales representative who handled regional and national accounts.  Throughout 2018-2021, Landis assumed a leadership role in the company and achieved most revenue goals and many accolades.

49.     In February 2020, Landis received approval from Jaime Kawaja, Landis's direct supervisor, Jeff Anderson, WKYT General Manager, and

9

Defendant's Senior Vice-President Matt Jaquint to work remotely from Atlanta as National Sales Manager.

50.    In March 2020, the company became fully remote because of COVID and continued to allow sales teams to work remotely until October 2021 and beyond her termination date.

51.    From March 2020 through her termination in October 2021, Landis continued to work from Atlanta remotely and seamlessly, often receiving compliments from Anderson, Jaquint, and Kawaja on her work ethic and regional/national sales achievements, including revenue growth, developing a nationally recognized market research report, and great relationships with regional and national accounts and agencies many of whom were located in the Atlanta region.

52.    Since working remotely in Atlanta, Landis upheld her standard of excellence, achieving most revenue goals and continuing to go above and beyond to help local WKYT sales representatives and management remotely, with a few Lexington market trips as allowed by Anderson, following all COVID protocols.

53.    In 2021, Landis surpassed her annual revenue goal in only nine months' time and prior to termination on October 1. That performance was exceptional, and extremely rare, for any salesperson to achieve a 12-month goal in only 9 months. Landis's bonus as national sales manager was based on an annual revenue goal, while all other WKYT sales representatives were bonused on

quarterly revenue goals. Defendant refused to pay Landis this earned 2021 bonus upon termination.

54.    Landis has a sincerely held religious belief that conflicts with subjecting herself to receiving the COVID-19 vaccine. She is a Christian, has accepted Jesus Christ as her Lord and Savior and endeavors to live according to His teachings and works.

55.    Landis believes the Bible is the divine word of God, and while salvation can only come through Christ, following the teachings within the Holy Bible is her duty. In considering the COVID-19 vaccine, Landis prayed for God's guidance and sought the scriptures of the Holy Bible for counsel. She reached the conclusion that she could not receive any of the COVID-19 vaccines and still be true to her Christian faith.

56.    Landis's Christian faith teaches that life begins at conception, as revealed in the scriptures. All of the provisionally approved COVID-19 vaccines were either developed or tested using cell lines that were generated or derived from tissues of aborted fetuses. She believes the elapsed time between any of those measures does not make the murder of these children any less sinful. Knowingly accepting the use of these cells in this context would violate Landis's sincerely held religious beliefs.

57.    On or about August 16, 2021, the same day Defendant announced the vaccine mandate, Landis emailed Shavonne Perry, Defendant's HR Director, to

11

request a copy of the full COVID-19 vaccine policy. Landis did not receive a response.

58.    On or about August 17, 2021, Landis emailed Perry again, this time requesting a Gray-approved document for requesting a religious exemption from the vaccine mandate. Perry replied with a form to complete and provided an arbitrary August 31, 2021 deadline to return the completed form, despite the fact that the vaccine mandate would not be in effect until September 15, 2021 for managers and October 1, 2021 or other employees. (See Exhibit A). Perry still did not provide Landis with a copy of the full COVID-19 vaccine policy.

59.    That same day, Landis emailed the completed religious accommodation form and cc'd Jamie Kawaja, Landis's direct supervisor, and Jeff Anderson, WKYT General Manager, to "open up dialogue as needed," as directed by the religious accommodation form Landis had completed. Despite that directive, Defendant did not "open up dialogue" and in fact refused to engage in any interactive process or meaningful discussion regarding Landis's proposed accommodation.

60.    Landis received no follow up or decision on her request for accommodation.

61.    Because she had not received any follow up, on September 27, 2021, twelve days after the September 15, 2021 manager's vaccination deadline, Landis emailed Gary Heichelbech, Gray HR, offering to discuss her request for a religious accommodation, including the details of her religious beliefs.

12

62.    Landis also specifically indicated she would take reasonable measures such as continuing to wear a mask in required situations, maintain social distancing, limit in-person interaction, and conduct periodic testing to ensure her condition before any in-person interaction.

63.    These offers were undisputedly reasonable for Defendant as these were accommodations the EEOC has identified as being reasonable for unvaccinated employees entering the workplace: "*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and other EEO Laws,*" U.S. Equal Employment Opportunity Commission, Technical Assistance Questions and Answers (as of May 28, 2021), and was also consistent with the federal mandate for employers with more than 100 employees implemented by the federal government. Those accommodations were also consistent with the working practice of Defendant until September 30, 2021 and had been specifically permitted for other employees, per Defendant's September 23, 2021 email. But with no explanation or lawful justification, Defendant refused to engage in any interactive process and unlawfully denied these reasonable accommodations.

64.    On September 28, 2021, two days before the October 1, 2021, deadline and almost a month-and-a-half after submitting her request for a religious accommodation, Landis received an email from an email account "vaccine@gray.tv" denying Landis's request for accommodation and requiring that Landis be "fully vaccinated" by October 1, 2021.

13

65.    On September 29, 2021, Landis *again* attempted to engage Defendant in an interactive process by responding to the generic "vaccine@gray.tv" email address with copy to Anderson to reiterate that due to her sincerely held religious beliefs she would not get the COVID-19 vaccine. At that time Landis reiterated that she had not had any opportunity for discussion with anyone at Defendant concerning her accommodation request other than the flat rejection email she received from a generic email account.

66.    Anderson merely responded that he had no input concerning vaccine accommodation requests and informed Landis that being fired for not being vaccinated was a re-hirable offense; small consolation to Landis who was facing termination for refusing to violate her sincerely held religious beliefs with no opportunity for discussion or an interactive process.

67.    Landis did not receive any response from the generic "vaccine@gray.tv" email address.

68.    Despite Landis's attempts to engage with Defendant concerning her request for an accommodation, Defendant refused to engage in any interactive process concerning Landis's request for accommodations, let alone engage in an interactive process in good faith, prior to flatly declining Plaintiff's proposed accommodation and terminating her employment, all without proposing any alternative accommodations.

69.    In other words, after delaying deciding Landis's accommodation request for almost a month-and-a-half, Defendant categorically denied Landis's

14

request, without any discussion or even a semblance of an interactive process and provided her less than 48 hours to be fully vaccinated for COVID-19 or be terminated.

70.    On October 1, 2021, merely two days after Defendant's delayed decision on Landis's request for accommodation—without Defendant having engaged in any interactive process—Landis was terminated from her employment with Defendant via a telephone call from Anderson because of her unvaccinated status.

71.    On October 15, 2021, Landis submitted a written request for reconsideration of her termination.

72.    On October 19, 2021, Landis received an email from Gary Heichelbech denying her request for reconsideration of termination stating, "regardless of your asserted religious beliefs, there is not a reasonable accommodation that would allow you to perform the essential functions of your role without imposing a substantial undue hardship on the company."

73.    In fact, Defendant had permitted a similarly situated male employee, with a substantially similar position and responsibilities, to work remotely both before and after the vaccine mandate went into effect.

74.    It was untrue that permitting Landis's proposed reasonable accommodation of working remotely would be an undue hardship and Defendant's excuse that permitting Landis to work remotely would be an undue hardship was mere pretext for denying her request for accommodations.

15

75.    By permitting a similarly situated male employee to work remotely but denying Landis's request to work remotely, Defendant discriminated against Landis based on her gender.

76.    Defendant offers a bonus program for sales representatives such as Landis.

77.    Under the bonus program, employees earn bonuses by meeting specified performance benchmarks.

78.    Prior to her last day on September 30, 2021, Landis had met all required benchmarks for the 2021 year. As a result, prior to her termination, Landis had earned, and was entitled to as part of her wages, the amount of her earned bonus under the bonus program.

79.    Defendant failed to timely pay Landis her earned wages by failing to pay her the bonus she earned prior to her termination.

80.    To this date, Defendant has still not paid Landis the amount of the bonus she earned prior to her termination.

81.    Simultaneous with wrongful termination of Cox and Landis, Defendant required and permitted its employees to attend numerous public events in order to provide media coverage under its normal operations. Every daily newscast after October 1, 2021, contained numerous instances of WKYT personalities and employees interacting with members of the public in a variety of contexts. No restrictions outside of WKYT's studios were ever implemented by the Defendant to ensure the health and safety of its employees.

16

82.   On November 21, 2021, despite its denial of Plaintiffs' requests for accommodation to allow them to mask, socially-distance and/or test, and insistence that Plaintiffs be vaccinated for COVID-19 or else be fired in violation of their rights, WKYT held a retirement party/roast for an employee with hundreds of persons in attendance. The event was widely publicized, covered by the local media, and shared prominently on social media. Neither vaccination or masks were required for attendance at the event and the party/roast violated most all health and safety protocols Defendant insisted upon for its employees.





83.    The event was a raucous success for Defendant but evidences the Defendant's hypocrisy, proves its pretextual reasons for terminating Plaintiffs, and further insulted, humiliated, and embarrassed Plaintiffs.

84.    On November 30, 2021, Defendant teamed with Chick-Fil-A and Mission of Hope and hosted a benevolent toy drive for local families in need. Defendant promoted the event and such footage is available online: https://www.wkyt.com/2021/11/17/wkyt-teaming-up-with-mission-hope-chick-fil-a-toy-drive/. Members of the public were encouraged to drop off their donations at Defendants' studios despite the fact Defendant had informed Plaintiffs they were unable to be present on Defendant's property because they were not vaccinated.

85.    Such charitable events were common for Defendant and Plaintiffs wholeheartedly supported many such endeavors while employed with the Defendant. But Defendant's hosting the event on its premises further evidences its

false and pretextual reasons for terminating Plaintiffs. If members of the public could drop off donations at Defendants' studios, Plaintiffs could have worked for Defendant, especially since Plaintiffs voluntarily proposed to mask, engage in social distancing, and test for COVID.

### CAUSES OF ACTION

### COUNT I: Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e et seq. (Sex Discrimination) by both Plaintiffs

86.     Plaintiffs reallege and incorporate by reference all allegations previously set forth in this complaint as if set forth in this section.

87.     Under Title VII, 42 U.S.C. § 2000e et seq., it is unlawful for an employer to discharge or otherwise discriminate against any employee with respect to her terms and conditions of employment based on the employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

88.     Plaintiffs are female, which is a protected class under Title VII.

89.     Defendant permitted similarly situated males to enter its workspaces and interact with its employees, contractors, and guests without being vaccinated against COVID-19 but terminated Plaintiffs' employment for not being vaccinated against COVID-19. This disparate treatment constituted unlawful discrimination in violation of Title VII.

90.     Defendant allowed a similarly situated unvaccinated male to perform the same type of work as Cox but informed Cox, who is female, that she could not perform the essential functions of her job without being vaccinated, denied her

requested exemptions, and terminated her employment. This disparate treatment constituted unlawful discrimination in violation of Title VII.

91.    Defendant allowed a similarly situated male to work entirely remotely but informed Landis, who is female, that she could not perform the essential functions of her job remotely and terminated Landis's employment. This disparate treatment constituted unlawful discrimination in violation of Title VII.

92.    As a result of Defendant's unlawful actions, Plaintiffs have suffered damages, including but not limited to lost past and future wages and benefits, emotional distress, embarrassment, humiliation, and damage to reputation.

93.    Defendant's actions were made intentionally, recklessly, and/or with willful disregard for the requirements of Title VII, which entitles Plaintiffs to an award of punitive damages.

### COUNT II: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Religious Discrimination) by Landis

94.    Plaintiffs reallege and incorporate by reference all allegations previously set forth in this complaint as if set forth in this section.

95.    Under Title VII 42 U.S.C. § 2000e et seq., it is unlawful for an employer to discharge or otherwise discriminate against any employee with respect to her terms and conditions of employment based on the employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

96.    Defendant is an employer that is subject to Title VII.

97.    Landis has a sincerely held religious belief that conflicted with Defendant's requirement that employees submit to receiving the COVID-19 vaccine.

20

98.    Landis advised Defendant of her religious objection to the COVID-19 vaccine, which constituted protected activity under Title VII.

99.    Landis requested reasonable accommodations that would not be unduly burdensome to Defendant.

100.    Defendant, without engaging in any interactive process, denied Landis's request for reasonable accommodations and terminated Landis's employment in violation of Title VII of the Civil Rights Act of 1964.

101.    Defendant violated Title VII by failing to make reasonable accommodations for Landis's sincerely held religious beliefs and terminating her employment.

102.    Defendant violated Title VII when it discriminated against Landis by terminating her for her sincerely held religious beliefs, including her objection to receiving the vaccine mandate.

103.    As a result of Defendant's unlawful actions, Landis has suffered damages, including but not limited to lost past and future wages and benefits, emotional distress, embarrassment, humiliation, and damage to reputation.

104.    Defendant's actions were made intentionally, recklessly, and/or with willful disregard for Landis's sincerely held religious beliefs and rights under Title VII, which entitles Landis to an award of punitive damages.

**COUNT III: Violation of the ADA pursuant to 42 USC § 12101 et seq. by Cox**

105.    Plaintiffs reallege and incorporate by reference all allegations previously set forth in this complaint as if set forth in this section.

21

106.   The ADA makes it unlawful to discriminate against qualified individuals with disabilities in the terms and conditions of their employment and requires employers to provide reasonable accommodations for employees' disabilities.

107.   Cox is a qualified individual with a disability and/or a perceived disability and/or a regarded as disability under the ADA. Cox is also an employee under the ADA.

108.   Cox proposed a reasonable accommodation that would not have been unduly burdensome to Defendant.

109.   Defendant failed to engage in the interactive process in good faith as required by the ADA.

110.   Defendant failed to reasonably accommodate Cox's disability in violation of the ADA.

111.   After refusing to engage in the interactive process in good faith and refusing to reasonably accommodate Cox's disability, Defendant terminated Cox's employment.

112.   Defendant terminated Cox's employment on the basis of a disability and/or a perceived disability and/or a regarded as disability in violation of the ADA.

113.   Defendant's failure to engage in the interactive process in good faith, failure to reasonably accommodate Cox's disability, and termination of Cox each violated the ADA.

114.   As a result of Defendant's violations of the ADA, Cox has suffered damages, including but not limited to lost past and future wages and benefits, emotional distress, embarrassment, humiliation, and damage to reputation.

115.   Defendant's actions were made intentionally, recklessly, and/or with willful disregard for Cox's rights under the ADA, which entitles Cox to an award of punitive damages.

**COUNT IV: KRS Chapter 344 (Sex Discrimination by both Plaintiffs)**

116.   Plaintiffs reallege and incorporate by reference all allegations previously set forth in this complaint as if set forth in this section.

117.   KRS Chapter 344, among other things, makes it unlawful for an employer to "refuse to hire, or to discharge, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker . . . ." KRS 344.040(a)(1).

118.   Defendant is an employer and Plaintiffs are employees under KRS Chapter 344.

119.   Plaintiffs are female, which is a protected class under KRS Chapter 344.

120.   Defendant permitted similarly situated males to enter its workspaces and interact with its employees, contractors, and guests without being vaccinated against COVID-19 but terminated Plaintiffs' employment for not being vaccinated

against COVID-19. This disparate treatment constituted unlawful discrimination in violation of KRS Chapter 344.

121.    Defendant allowed a similarly situated male employee to work entirely remotely but informed Landis, who is female, that she could not perform the essential functions of her job remotely and terminated Landis's employment. This disparate treatment constituted unlawful discrimination in violation of KRS Chapter 344, including but not limited to KRS 344.040.

122.    As a result of Defendant's unlawful actions, Plaintiffs have suffered damages, including but not limited to lost past and future wages and benefits, emotional distress, embarrassment, humiliation, and damage to reputation.

## COUNT V: KRS Chapter 344 (Religious Discrimination) by Landis

123.    Plaintiffs reallege and incorporate by reference all allegations previously set forth in this complaint as if set forth in this section.

124.    Landis has a sincerely held religious belief that conflicted with Defendant's requirement that employees submit to receiving the COVID-19 vaccine.

125.    Landis advised Defendant of her religious objection to the COVID-19 vaccine, which constituted protected activity under KRS Chapter 344.

126.    Landis requested reasonable accommodations.

127.    Defendant, without engaging in any interactive process, denied Plaintiffs Landis's request for reasonable accommodations and terminated Plaintiff's employment in violation of KRS Chapter 344, including but not limited to KRS 344.040.

24

128.    Defendant violated KRS Chapter 344, including but not limited to KRS 344.040, by failing to make reasonable accommodations for Plaintiffs Landis's sincerely held religious beliefs and terminating her employment.

129.    Defendant violated KRS Chapter 344, including but not limited to KRS 344.040, when it discriminated against Landis by terminating her for her sincerely held religious beliefs, including her objection to the vaccine mandate.

130.    As a result of Defendant's unlawful actions, Landis has suffered damages, including but not limited to lost past and future wages and benefits, emotional distress, embarrassment, humiliation, and damage to reputation.

## **COUNT VI: KRS Chapter 344 (Disability Discrimination by Cox)**

131.    Plaintiffs reallege and incorporate by reference all allegations previously set forth in this complaint as if set forth in this section.

132.    Cox is a qualified individual with a disability and/or a perceived disability and/or a regarded as disability under KRS Chapter 344.

133.    Cox proposed a reasonable accommodation that would not have been unduly burdensome to Defendant.

134.    Defendant failed to engage in the interactive process in good faith as required by KRS Chapter 344.

135.    Defendant failed to reasonably accommodate Cox's disability in violation of KRS Chapter 344.

136.    After refusing to engage in the interactive process in good faith and refusing to reasonably accommodate Cox's disability, Defendant terminated Cox's employment.

137.    Defendant terminated Cox's employment on the basis of a disability and/or a perceived disability and/or a regarded as disability in violation of KRS Chapter 344.

138.    Defendant's failure to engage in the interactive process in good faith, failure to reasonably accommodate Cox's disability, and termination of Cox each violated KRS Chapter 344, including but not limited to KRS 344.040.

139.    As a result of Defendant's violations of KRS Chapter 344 Cox has suffered damages, including but not limited to lost past and future wages and benefits, emotional distress, embarrassment, humiliation, and damage to reputation.

### COUNT VII: Violation of KRS § 337.010 et seq.

140.    Plaintiffs reallege and incorporate by reference all allegations previously set forth in this complaint as if set forth in this section.

141.    KRS 337.060 makes it unlawful for an employer to withhold from an employee any part of the wage agreed upon and KRS 337.055 requires an employer, within fourteen (14) days following dismissal of an employee, to pay in full all wages or salary earned by the employee.

142.    Landis's wages included amounts she earned under the bonus program by meeting specified goals.

26

143.    At the time of her termination, Landis had already met the prescribed goals for the 2021 year, which entitled her to receive a bonus under the bonus program.

144.    At the time Landis met the prescribed annual goal for 2021, the amount of the bonus under the bonus program was earned and became part of the wage agreed upon.

145.    The amount of the bonus earned by Landis is part of Landis's wages under KRS Chapter 337.

146.    Defendant has failed to timely to pay Landis her bonus for the 2021 period and has thus withheld part of the wage agreed upon in violation of KRS Chapter 337.

147.    As a result, Landis is entitled to monetary damages against Defendant as provided for by KRS 337.385, including payment of the wages due to her, liquidated damages, attorney fees, and litigation expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand the following relief:

1. Compensatory and actual damages, including but not limited to lost past and future pay and benefits;

2. Compensatory damages including but not limited to emotional distress, embarrassment, mental anguish, humiliation, and damage to reputation;

3. All statutory remedies afforded by Title VII, the ADA and KRS Chapters 344 and 337;

4.  Equitable relief in the form of reinstatement and/or front pay;

5.  Punitive damages;

6.  An award of attorney fees, expert witness fees, costs and expenses;

7.  Pre- and post-judgment interest; and

8.  All other and additional relief to which Plaintiffs may be entitled.

<u>**JURY DEMAND**</u>

Plaintiffs demand a jury trial for all issues triable by jury.

Respectfully submitted,

*/s/ Bryan H. Beauman*
Bryan H. Beauman
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, Kentucky 40507
Telephone: 859.255.8581
Facsimile: 859.231.0851
bbeauman@sturgillturner.com
*ATTORNEY FOR PLAINTIFFS*

28

## VERIFICATION

I verify under penalty of perjury that the allegations concerning me contained in the above Verified Complaint are true and accurate to the best of my knowledge and belief.

DeAnn Stephens Cox

## VERIFICATION

I verify under penalty of perjury that the allegations concerning me contained in the above Verified Complaint are true and accurate to the best of my knowledge and belief.

Ashley Landis   11/1/2022

Ashley Landis